3M COMPANY, Appellant,

v.

Hon. William ENGLE III, Judge, Perry Circuit Court, et al., Appellees.

and

Kentucky Mine Supply, et al., Real Parties in Interest.

American Optical Corporation and 3M Company, Appellants,

v.

Delbert Miller, et al., Appellees.

Nos. 2010–SC–000125–MR, 2010–SC–000163–MR.

Supreme Court of Kentucky.

Dec. 16, 2010.

As Corrected Dec. 27, 2010.

Adam Benjamin Shadburne, Byron N. Miller, Thompson Miller & Simpson PLC, Louisville, KY, Bryant Jonathan Spann, Allen Guthrie & Thomas, PLLC, Charleston, WV, for appellant 3M Company.

Carol Dan Browning, Julie Marie McDonnell, Robert Michael Connolly, Whitney Frasier Watt, Stites & Harbison, PLLC, Louisville, KY, for appellant/real party in interest American Optical Corp.

Hon. William Engle III, Judge, Perry Circuit Court, Hazard, KY, appellee.

Alva A. Hollon, Jr., John Oaks Hollon, Sams & Hollon, P.A., Jacksonville, FL, James Douglas Holliday, Hazard, KY, for appellees Delbert Miller, et al.

Craig Robert Banford, James David Bolen, Jr., Huddleston Bolen Beatty Porter

& Copen LLP, Huntington, WV, for real party in interest Kentucky Mine Supply.

David Eric Lycan, William Harvey May, Hurt, Crosbie, May, PLLC, Lexington, KY, for real party in interest The Special Fund.

Milton Trent Spurlock, Phillips Parker Orberson & Moore, P.L.C., Robert Young Gwin, Gwin Steinmetz Miller & Baird, PLLC, Louisville, KY, for real party in interest Mine Safety Appliances Company.

Patrick W. Gault, Napier Gault Keith PLC, Louisville, KY, for real party in interest Mine Service Company, Inc.

Robert L. Whittaker, Department of Labor, Frankfort, KY, for real party in interest Workers' Compensation Fund.

Opinion of the Court by Justice
SCHRODER.

Defendants/Appellants appeal from an order of the Court of Appeals issuing a writ of prohibition to prevent the deposition of the Plaintiffs'/Appellees' attorney in the underlying civil suit. We conclude that the Court of Appeals erred in issuing the writ. The trial court did not act erroneously, and the Plaintiffs have waived attorney-client privilege with respect to the matters about which the attorney is to be deposed. Therefore, we reverse and vacate the Court of Appeals' issuance of the writ.

## I. BACKGROUND

Plaintiffs/Appellees (collectively "the Plaintiffs") are a group of coal miners[1] suffering from coal workers' pneumoconiosis (CWP), also known as "black lung."

The miners, alleging that the respirator equipment they used throughout their careers was defective, filed suit against the manufacturers and distributors of the equipment. Defendants/Appellants 3M Company (3M) and American Optical Corp. (American Optical) (collectively "the Defendants") are both manufacturers of allegedly defective equipment.

Following discovery, the Defendants filed motions for summary judgment, asserting that the Plaintiffs' claims were barred by the one-year statute of limitations.[2] Relying on the discovery rule,[3] the Plaintiffs asserted that they did not learn of a possible connection between their CWP and defective respirators until informed by their attorney. Each plaintiff submitted an affidavit, stating:

> I filed this lawsuit within one year of the date I was informed by my attorney in this lawsuit that there may be a causal connection between my lung disease and defects in the respirators that I wore throughout my career. I was never told by any prior attorney, government agency, or other person that there might be a connection between any dust mask and my disease.

Judge William Engle III, respondent in the original writ action, denied the Defendants' motions for summary judgment, finding that there was a genuine issue of material fact as to when the Plaintiffs' causes of action accrued. Following the trial court's ruling, the Plaintiffs stated, through additional discovery, that the only persons with whom they discussed a possible connection between respirators and

1. The Plaintiffs also include the estates of several deceased coal miners.

2. KRS 413.140(1)(a).

3. *Louisville Trust Co. v. Johns–Manville Products Corp.*, 580 S.W.2d 497, 501 (Ky.1979).

Though not an issue in this writ action, it should be noted, in relation to the discovery rule, that the Plaintiffs allege that the Defendants concealed the defective nature of the respirators.

their CWP were their attorneys, Alva Hollon, Jr. and James D. Holliday, and that they did so at a meeting occurring nearly one year before their suits were filed.

The Defendants sought to depose Plaintiffs' attorney James Holliday, in order to learn when he first discussed with the Plaintiffs a possible connection between their respirators and CWP, as well as when he himself first learned of such a possible connection. 3M also submitted interrogatories and requests for production to Holliday, which included requests to disclose when and how Holliday first learned of any theory of liability against 3M, to describe the substance of Holliday's discussions with his clients, to elaborate on the substance of a meeting with his clients, and to produce his "entire file for each prior matter in which he has represented" the Plaintiffs. The Plaintiffs filed motions for a protective order against the deposition, and against the interrogatories and requests for production.

With regard to the deposition of attorney Holliday, Judge Engle denied the Plaintiffs' motion for a protective order and ordered Holliday to appear to be deposed. With regard to the Defendants' interrogatories and requests for production, Judge Engle granted the Plaintiffs' motion for a protective order on an interim basis, pending Holliday's deposition and further orders from the court. The Plaintiffs sought a writ of prohibition from the Court of Appeals to prevent enforcement of Judge Engle's order requiring that Holliday be deposed. The Court of Appeals granted the writ, and 3M and American Optical now appeal to this Court.

## II. ANALYSIS

Whether to issue a writ is always discretionary.[4] A writ *may* be granted in two classes of cases.[5] The first is where "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court...."[6] It is undisputed that this first class of writ does not apply to this case.

The second class of writ may issue where "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted."[7] The petitioner must generally be the party who stands to suffer great injustice and irreparable injury.[8]

However, even where the petitioner does not stand to suffer irreparable injury,[9] "in certain special cases," a writ may issue where "the administration of justice generally will suffer the great and irreparable injury."[10] The Court of Appeals issued the writ in this case under the "certain special cases" subcategory. For writs of this type, we conduct a *de novo* review of the decision of the Court of

4. *Hoskins v. Maricle*, 150 S.W.3d 1, 9 (Ky. 2004).

5. *Id.* at 10.

6. *Id.*

7. *Id.*

8. *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961).

9. *See Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky.2004) (defining an irreparable injury as "something of a ruinous nature", quoting *Bender*, 343 S.W.2d at 801).

10. *Bender*, 343 S.W.2d at 801. *See also Toyota Motor Mfg., Kentucky, Inc. v. Johnson*, 323 S.W.3d 646, 649–50 (Ky.2010).

Appeals.[11]

## A. Attorney–Client Privilege Implicates The "Certain Special Cases" Writ

█ Taking as true the Plaintiffs' claim of error by the trial court, as we are required to do at this stage in the analysis,[12] our precedents indicate that, where privileged information is in danger of being disclosed, there is no adequate remedy on appeal.[13] While there is also generally no irreparable injury to the petitioner personally, any discovery that violates the attorney-client privilege implicates the "certain special cases" subcategory of writ, in which the harm is to the administration of justice.[14] Because the Plaintiffs would be entitled to issuance of a writ if their claim of error were true, we now consider whether the trial court acted erroneously.

## B. The Trial Court Did Not Act Erroneously

█ The deposition of opposing counsel is governed by *McMurry v. Eckert.*[15] Under *McMurry*, opposing counsel may only be deposed upon a showing by the party seeking discovery that (1) the information sought is relevant and not privileged, (2) no other means exist to obtain

the information, and (3) the information is crucial to the preparation of the case.[16]

### 1. Relevant and Not Privileged

█ Kentucky's attorney-client privilege is found in KRE 503, the substance of which grants a client "a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client...."[17] However, a client "waives the privilege if he ... voluntarily discloses or consents to disclosure of any significant part of the privilege matter."[18] This waiver may be explicit, but it may also be implied. Professor Lawson has explained the concept of implied waiver:

> The client may waive the [attorney-client] privilege by taking positions that place the substance of the communications in issue.... A position that seems often to bring implied waiver into play is clients' claim that they acted or refrained from acting on advice of counsel.... With this and other similar positions, the inquiry for the trial court "is whether allowing the privilege to protect against disclosure of the information

---

11. *Grange,* 151 S.W.3d at 810.

12. *St. Luke Hosp., Inc. v. Kopowski,* 160 S.W.3d 771, 774–75 (Ky.2005) ("In executing our cautious review to ensure that a party meets the required threshold of harm and lack of redressability on appeal, we take as true the movant's claim of error. This is not to say, however, that error was committed. That is a question deferred to the next stage of analysis. This Court said it this way in *Bender v. Eaton,* '[t]his is a practical and convenient formula for determining, *prior to deciding the issue of alleged error,* if petitioner may avail himself of this remedy.' ") (quoting *Bender,* 343 S.W.2d at 801) (footnotes omit-

ted) (brackets in original) (emphasis in *Bender*).

13. *Id.* at 775.

14. *Id.*

15. 833 S.W.2d 828 (Ky.1992).

16. *Id.* at 830 (quoting *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986)).

17. KRE 503(b).

18. KRE 509. *See also St. Clair v. Commonwealth,* 140 S.W.3d 510, 548–49 (Ky.2004).

would be manifestly unfair to the opposing party."[19]

This Court has also acknowledged the concept of implied waiver.[20]

In latent disease cases such as this one, a plaintiff's cause of action accrues when he discovers, or in the exercise of reasonable diligence should have discovered, that he has been injured and that his injury may have been caused by the defendant.[21] Once a plaintiff's cause of action has accrued, he has one year in which to file suit, after which his claim is barred by the statute of limitations.[22] When a plaintiff is put on notice of his injury is a question of fact for the jury.[23]

The Plaintiffs assert that their causes of action did not accrue until their attorney informed them of a connection between their respirator equipment and CWP. As a result of this assertion, the nature and timing of the Plaintiffs' communications with their attorney, regarding this possible connection, has become not only relevant, but in fact critical to the case. In addition, the circuit court relied on the Plaintiffs' representations when it denied the Defendants' motions for summary judgment. Under these circumstances, "allowing the privilege to protect against disclosure of the information would be manifestly unfair" to the Defendants.[24]

Furthermore, under certain circumstances, an attorney's knowledge may be imputed to his or her client.[25] Therefore, also at issue in this case is when the Plaintiffs' attorneys learned of a possible connection between the Defendants' equipment and CWP, and whether that knowledge can be imputed to the Plaintiffs under the circumstances as they existed at that time.[26]

19. ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK, § 5.05[10], at 363–64 (4th ed.2003 & 2010 supp.) (footnotes omitted) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)). *See also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975) (discussing three factors found in cases of implied waiver: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.").

20. *See Lexington Public Library v. Clark*, 90 S.W.3d 53, 61 (Ky.2002) (holding that any privilege was waived when the privileged information was voluntarily disclosed to a third party, and referencing the concept of implied waiver).

21. *Johns–Manville Products Corp.*, 580 S.W.2d at 501 (citing *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170, 174 (1977)).

22. *See* KRS 413.140(1)(a).

23. *Lipsteuer v. CSX Transp., Inc.*, 37 S.W.3d 732, 737 (Ky.2000); *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 759 (Ky.1965).

24. LAWSON, *supra* n. 19.

25. *See, e.g., Drinkard v. George*, 237 Ky. 560, 36 S.W.2d 56, 57 (1930); *Lisanby v. Illinois Cent. R.R. Co.*, 209 Ky. 325, 272 S.W. 753, 754–55 (1925); *Barnes v. Commonwealth*, 179 Ky. 725, 201 S.W. 318, 322 (1918). *See also Michels v. Sklavos*, 869 S.W.2d 728, 731–32 (Ky.1994).

26. The general rule that an attorney's knowledge may be imputed to his or her client is subject to a number of exceptions. 7A C.J.S. *Attorney & Client* § 225 ("Accordingly, knowledge which an attorney obtained in transactions independent of his or her representation of the client is not imputed to the client, and a client is not affected with notice because of knowledge obtained by the attorney from outside sources and not in the course of his or her employment, as, for example, where the knowledge is acquired by the attorney in the performance of professional services for another. Nor is the client affected by knowledge acquired, or notice received, by the attorney before the commencement of the attorney-client relationship.").

*To the extent that the Plaintiffs have placed their communications with Holliday at issue* in this case, they have impliedly waived the attorney-client privilege. For the same reasons, the information the Defendants seek to gain by deposing Holliday is highly relevant. The information sought is therefore relevant and not privileged.[27]

## 2. No Other Means of Obtaining the Information

The Defendants also have no other means of obtaining the information they seek other than through the deposition of opposing counsel. Depending upon the circumstances of representation, the Plaintiffs' attorneys' knowledge of a possible connection between CWP and respirator equipment *may* be attributable to the Plaintiffs.[28] Thus, only Holliday and the Plaintiffs' other attorneys are in a position to explain when they first learned of a possible connection, what the circumstances of their representation of the Plaintiffs were at that time, when they informed the Plaintiffs of a possible cause of action, and how they went about informing the Plaintiffs. This information is highly relevant to the Defendants' statute of limitations defense, and cannot be obtained by any means other than by deposing opposing counsel.

## 3. Crucial to the Preparation of the Case

The information the Defendants seek to obtain by deposing Holliday is relevant in determining whether the Plaintiffs' claims are barred by the statute of limitations. As stated previously, once a plaintiff's cause of action has accrued, he must file suit within one year, or else his claim is barred by the statute of limitations.[29] The information the Defendants seek to obtain could very well determine the ultimate outcome in this case. We therefore see no way that this information is not crucial to the preparation of the Defendants' case.

The information the Defendants seek to obtain by deposing Holliday is relevant and not privileged, not capable of being obtained by other means, and crucial to the preparation of the case. Therefore, the trial court did not act erroneously in permitting the Defendants to depose Holliday.

## III. CONCLUSION

With respect to the matters about which the Defendants seek to depose attorney Holliday, the Plaintiffs have waived the attorney-client privilege. Thus, the Plaintiffs did not make the showing necessary for the issuance of an extraordinary writ, because the trial court did not act erroneously in compelling Holliday to appear to

27. Of course, for matters that remain privileged, the Plaintiffs would retain the right to object and seek a protective order or other relief pursuant to CR 26.03, CR 30.03, and CR 30.04. We also note that much of the Plaintiffs' argument focuses on 3M's interrogatories and requests for production. Admittedly, much of the information and many of the documents sought by 3M are likely protected from disclosure by attorney-client privilege or by the work product doctrine. *See* CR 26.02(3). However, at this time, a protective order remains in effect preventing the Plaintiffs from being required to disclose this information or to turn over the requested

documents. Judge Engle was clearly postponing ruling on these interrogatories and requests for production until after Holliday had been deposed. There is therefore no evidence that the lower court "is acting or is about to act erroneously[.]" *Hoskins*, 150 S.W.3d at 9.

28. *See, e.g., Michels*, 869 S.W.2d at 731–32; *Drinkard*, 36 S.W.2d at 57; *Lisanby*, 272 S.W. at 754–55; *Barnes*, 201 S.W. at 322; *but see* 7A C.J.S. *Attorney & Client* § 225.

29. *See* KRS 413.140(1)(a).

be deposed. Therefore, we reverse and vacate the Court of Appeals' issuance of the writ.

All sitting. All concur.